UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Republic Bank of Chicago,
an Illinois Banking Corporation,

    Plaintiff,

v.                                                                Civil No. 10-537 (JNE/JJK)
                                                                                                    ORDER

Lighthouse Management Group, Inc.,
as Receiver for First United Funding, LLC,
a Minnesota limited liability company;
Corey N. Johnston; Choice Financial Group;
John Doe; Mary Roe; and XYZ Corporation,

    Defendants.

---

Mychal A. Bruggeman, Esq., Mackall, Crounse & Moore, PLC, appeared for Plaintiff Republic Bank of Chicago.

Gregory E. Karpenko, Esq., Fredrikson & Byron, P.A., appeared for Defendant Lighthouse Management Group, Inc.

Tracy A. Kennedy, Esq., Zimney Foster P.C., appeared for Defendant Choice Financial Group.

Defendants First United Funding, LLC, and Corey N. Johnston did not appear.

---

      Republic Bank of Chicago (Republic) asserts state-law claims for breach of contract, fraud and misrepresentation, conversion, breach of fiduciary duty, civil theft, replevin, detinue, and claim and delivery against Lighthouse Management Group, Inc. (Lighthouse), First United Funding, LLC (First United), Corey N. Johnston, Choice Financial Group (Choice), and three unidentified defendants. Republic seeks a declaration of its rights under certain "participation agreements"; assignment to Republic of the rights, duties, obligations, and loan documents held by First United under the participation agreements; and damages. The case is before the Court on the motions of Lighthouse, Johnston, and Choice (collectively, Moving Defendants) to

dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Court heard oral argument on the motions to dismiss on June 10, 2010. For the reasons stated below, the Court grants the motions.

## I. BACKGROUND

This case arises out of the alleged fraudulent conduct of First United, which was in the business of lending funds to borrowers in exchange for promissory notes, security interests in collateral, guaranties, and other assurances of payment. First United then entered into participation agreements with various financial institutions (participating banks) by which the participating banks purchased percentages of promissory notes and First United was obligated to administer the notes for the benefit of the participating banks, to act prudently in servicing the loans, and to take reasonable steps in the event of default.

First United's fraudulent conduct began as early as 2003. The fraudulent conduct included overselling participations and using funds intended to purchase participation interests to pay the personal expenses of Johnston, the principal of First United. First United also used funds intended to purchase participation interests to make payments to other participating banks, used participant funds to satisfy obligations to oversold participants on oversold loans, and moved participation interests from oversold loans to non-oversold loans without additional funding. In total, First United sold approximately $234 million in participations on $206 million in loans, and at least $7.5 million of First United's funds were improperly used for Johnston's personal

---

[1] Johnston filed a motion to dismiss and notice of motion, but did not appear at the hearing or file a memorandum in support of his motion.

expenses or affiliated business expenses. Eighteen banks were affected by First United's fraud, including Republic, Choice, and The Bank, Weatherford, Texas (Weatherford).[2]

First United sold participation interests in $61 million in loans made to, or guaranteed by, a certain group of individuals and entities (Moyes loans). First United sold to sixteen banks approximately $86 million in loan participations related to the Moyes loans. Over $41 million of the Moyes loans have matured, and an additional $19.3 million worth are due to mature in the next few months. The borrowers and guarantors of the Moyes loans are not presently able to repay those loans.

Republic entered into two participation agreements with First United by which Republic purchased 100% interests in promissory notes associated with two Moyes loans secured by real estate located in Lancaster and Fort Worth, Texas (Lancaster Loan and Fort Worth Loan). Republic funded those loans by advancing $7.21 million to First United. The Lancaster and Fort Worth Loans have matured.

The participation agreements associated with the Lancaster and Fort Worth Loans require First United to collect all loan payments and pay all such amounts to the participants, minus a servicing fee. The participation agreements also provide a majority interest of participants with the power to veto First United's exercise of remedies against the borrowers in the event of default and require the majority interest's consent to any modification or restructuring of the Lancaster and Fort Worth Loans. In addition, Section 7.4 of the participation agreements provides for the assignment, on written demand, of the loan documents, including the loan agreements, promissory notes, guaranties, and deeds of trust, and other loan collateral to the majority interest if First United fails to perform its obligations under the agreements, breaches

---

[2] Republic named Weatherford as a defendant in this action, but voluntarily dismissed its claims against Weatherford on April 22, 2010.

the agreements, becomes subject to a receivership proceeding, or makes material misrepresentations or false warranties. Republic alleges that it holds a majority interest in the Lancaster and Fort Worth Loans. The participation agreements provide that they "shall be construed and enforceable in accordance with the laws of the State of Minnesota."

In addition to the 100% interests sold to Republic, First United sold Weatherford a 37.93% interest in the promissory note associated with the Lancaster Loan and Choice a 32.55% interest in the promissory note associated with the Fort Worth Loan. First United sold the interests to Weatherford and Choice after Republic purchased its 100% interests in those notes.

In October 2009, Community First Bank, one of the participating banks, initiated a state-court action in Dakota County triggered by First United's defaults under certain participation agreements. On October 23, 2009, the state court appointed Lighthouse as receiver to "manage, control, administer, and take assignment of all of the assets of [First United]." The state court appointed Lighthouse as receiver of First United's assets "in the broadest sense." The state court also empowered Lighthouse to "take an immediate assignment of the loan documents securing the Participation Agreements [and] take control and administer all accounts, and rights to payment associated therewith" pursuant to the terms of the participation agreements. On December 3, 2009, the state court expanded Lighthouse's role as a receiver to authorize the seizure of nonexempt property from Johnston and administer and operate all loan documents, including participation agreements, accounts, and rights to payment, of First United.

In January 2010, Lighthouse moved for a further expansion of the receivership. On February 1, 2010, Republic filed a complaint in intervention in the receivership proceeding.[3] Republic asserts the same claims for breach of contract, fraud and misrepresentation, conversion,

---

[3] Weatherford and Choice have also filed complaints in intervention in the receivership proceeding asserting their interests in the Lancaster and Fort Worth Loans.

4

breach of fiduciary duty, and civil theft as it asserts here, and seeks the same relief. Choice and First United objected to Republic's intervention, requiring Republic to file a motion to intervene. On February 2, 2010, the state court heard oral argument on Lighthouse's motion to expand its authority from First United's assets to First United itself. On February 5, 2010, the state court expanded Lighthouse's authority as receiver to include the management and operation of the assets and debts of First United, which included the authority to "[c]ontinue, modify, or enter into any and all agreements that are necessary or advantageous to First United's business operations." The state court also said "it is appropriate for [Lighthouse's] authority to include a unilateral ability to negotiate and approve discounts with loan obligors."

On February 16, 2010, Lighthouse presented to the participating banks a proposal for restructuring the Moyes loans, including the Lancaster and Fort Worth Loans. On February 17, 2010, Lighthouse presented to the participating banks a recommendation for distributing the proceeds of all of First United's loans on a pro rata basis. Republic voted against the recommendations. On February 19, 2010, Republic filed a motion to clarify Lighthouse's powers in light of the state court's statement in the February 5 order that it was appropriate for Lighthouse's authority to include a unilateral ability to negotiate and approve discounts with loan obligors. Republic also filed a notice of removal in the state court action on February 19, which it subsequently withdrew.

On February 25, 2010, Republic filed its Complaint in this action. Early in March 2010, Lighthouse filed a motion for approval of the proposed pro rata distribution and restructuring. On March 31, 2010, Republic filed in the receivership action a memorandum in opposition to Lighthouse's motion for approval of the proposed distribution. On April 9, 2010, the state court heard oral argument on Lighthouse's motion for authorization to restructure the Moyes loans,

5

Lighthouse's motion for approval of the proposed distribution, and Republic's motion to clarify the state court's order. The state court also granted Republic's motion to intervene on April 9. On April 30, 2010, the state court issued an order approving the terms of the Moyes restructuring and permitting Lighthouse to effectuate the restructuring except that Lighthouse was prohibited from restructuring or refinancing the Lancaster and Fort Worth Loans without the consent of Republic, Weatherford, and Choice. The state court also provided that Lighthouse "shall continue to control, manage, collect payments on, and otherwise administer the [Lancaster and Fort Worth Loans] until further order of [the state court]." The April 30 order continued the hearing on Lighthouse's motion for approval of the proposed pro rata distribution to September 27, 2010; set deadlines for the filing of motions in opposition to the proposed distribution; permitted discovery with respect to Lighthouse's motion; and set a trial date of February 7, 2011.

## II. DISCUSSION

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) that is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6).[4] *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003). On a motion to dismiss under Rule 12(b)(6), a court accepts as true the facts alleged in the complaint and grants all reasonable inferences in favor of the non-moving party. *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 506 (8th Cir. 2009). The allegations must include sufficient facts to state a facially plausible claim to relief. *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[4] A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The Moving Defendants' motions are limited to a facial attack on the pleadings because they does not challenge the truthfulness of the Complaint's allegations.

misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Lighthouse moves to dismiss pursuant to the doctrines set forth in *Barton v. Barbour*, 104 U.S. 126 (1881), *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456 (1939), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Choice joins Lighthouse's motion in its entirety. Johnston asserts that all claims "should be raised in the pending state court action," which the Court construes as an argument for dismissal under *Princess Lida* and *Colorado River*.

**A.** *Barton*

Lighthouse and Choice contend that the Court lacks subject matter jurisdiction over this action under *Barton*, which provides that a receiver "shall not be liable to suit unless leave is first obtained of the court by which he was appointed." 104 U.S. at 136. "Although the *Barton* decision is more than 125 years old, federal courts have consistently and explicitly affirmed the doctrine's continuing vitality." *Seaman Paper Co. of Mass. v. Polsky*, 537 F. Supp. 2d 233, 236 (D. Mass. 2007) (collecting cases).

It is undisputed that Republic did not obtain leave of the state court before filing this suit against Lighthouse. Republic contends, however, that the Court has jurisdiction under 28 U.S.C. § 959(a) (2006), which provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."

Section 959(a) applies to receivers appointed by federal courts. *See S.E.C. v. Lincoln Thrift Ass'n*, 557 F.2d 1274, 1277 n.1 (9th Cir. 1977) ("[I]t has been held that, absent statutory authorization, a federal receiver cannot be sued without leave of the court which appointed him."). Republic cites no authority in support of its argument that § 959(a) applies to receivers appointed by state courts, and the Court determines that it does not. Section 959(a) does not permit maintenance of this action against Lighthouse because Lighthouse was appointed by a state court.

Republic also contends that *Barton* does not apply to this action because Lighthouse has wrongfully seized property of Republic by continuing to administer the Lancaster and Fort Worth Loans in contravention of Republic's rights under the participation agreements. An exception to the *Barton* doctrine exists if "the receiver takes possession of property belonging to another" because "in such case the receiver would be acting *ultra vires*." 104 U.S. at 134. On October 23, 2009, the state court authorized Lighthouse to "administer and operate the loan documents, accounts, [and] rights to payments" at issue in the receivership proceeding and to "take an immediate assignment of the loan documents securing the Participation Agreements." On December 3, 2009, the state court authorized Lighthouse to "administer and operate any and all loan documents, including participation agreements, accounts, and rights to payments of [First United]," and on February 5, 2010, the state court expanded Lighthouse's authority "to include the management and operations of the assets and debts of [First United]" and stated that "it is appropriate for [Lighthouse's] authority to include a unilateral ability to negotiate and

approve discounts with loan obligors." In short, Lighthouse acted within the scope of its authority as receiver in administering the loans.[5]

Republic's reliance on *Teton Millwork Sales v. Schlossberg* does not persuade the Court otherwise. In *Teton*, the receiver was authorized to take possession of the assets of a husband in a marital dissolution action. 311 F. App'x 145, 146-47 (10th Cir. 2009). The receiver seized 100% of the assets of a corporation despite knowing the husband was only a 25% shareholder in the corporation. *Id.* at 147. The court of appeals concluded that the receiver acted *ultra vires* because he seized property that did not belong to the husband. *Id.* at 147-49. Here, however, Republic alleges that it "is entitled to take assignment of" and "entitled to possession and ownership of" the loan documents, collateral, and rights to payment associated with the Lancaster and Fort Worth Loans, not that those assets are presently Republic's property. In addition, Republic does not identify any act of Lighthouse that exceeds the scope of authority expressly granted by the state court. For these reasons, the *ultra vires* exception to the *Barton* doctrine is inapplicable, and the Court grants Lighthouse's and Choice's motions to dismiss under *Barton*.[6]

---

[5] At oral argument on Lighthouse's motion, Republic argued that Lighthouse's proposal of a pro rata distribution plan was *ultra vires* because Lighthouse's authority did not extend to distributing payments received on the Lancaster and Fort Worth Loans. Lighthouse, however, has not exceeded its authority because it has not distributed any payments received on the Lancaster and Fort Worth Loans. Rather, it has merely proposed a pro rata distribution that must be approved or rejected by the state court.

[6] The parties did not address the effect of a dismissal under *Barton* on non-receiver defendants such as Choice and Johnston. At least one court has dismissed on *Barton* grounds only defendants who were receivers or trustees. *See, e.g.*, *Shavers v. Murray*, Case No. 2:05CV202, 2006 WL 1666693 (N.D. Miss. June 12, 2006); *cf. Lawrence v. Goldberg*, 573 F.3d 1265, 1269-80 (11th Cir. 2009) (analyzing whether *Barton* applied to all defendants). The Court does not address this issue because, as discussed below, dismissal of this action under *Princess Lida* and *Colorado River* is warranted.

B. *Princess Lida*

The Moving Defendants assert that the Court should abstain from exercising its jurisdiction over this action under *Princess Lida*, which states:

> [I]f . . . two suits are *in rem*, or *quasi in rem*, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought[,] the jurisdiction of the one court must yield to that of the other.

305 U.S. at 466.

The *Princess Lida* doctrine "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Id.* On the other hand, the doctrine "has no application to a case in a federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right [or] his interest as a basis of a claim against a fund in the possession of a state court." *Id.*

Republic argues that the state court has not exercised jurisdiction over the Lancaster and Fort Worth Loans because First United's only assets relating to those loans are servicing rights and fees and because the state court has not said that Lighthouse owns the Lancaster and Fort Worth Loans. In Minnesota, the appointment of a receiver is a *quasi in rem* proceeding. *Schwartz v. First Trust Co. of St. Paul*, 52 N.W.2d 290, 294 (Minn. 1952); *see also Penn Gen. Cas. Co. v. Pa. ex rel. Schnader*, 294 U.S. 189, 195 (1935) (characterizing "suits in equity for the control by receivership of the assets of an insolvent corporation" as *in rem* or *quasi in rem* actions necessitating abstention in subsequent proceedings requiring control of the property). Moreover, Republic's assertion that the state court has not exercised jurisdiction over the Lancaster and Fort Worth Loans is contradicted by the state court's orders expressly authorizing

10

Lighthouse to "control" and "collect payments on" those loans. The Court concludes that the state court has exercised jurisdiction over the Lancaster and Fort Worth Loans in the *quasi in rem* receivership proceeding.

Republic also contends that this action is not *in rem* or *quasi in rem* because Republic seeks only adjudication of its property and contract rights in the Lancaster and Fort Worth Loans and associated participation agreements. By seeking assignment to it of the Lancaster and Fort Worth Loans, Republic seeks more than an adjudication of its rights. The Court cannot assign the Lancaster and Fort Worth Loans to Republic without exercising control over them. Consequently, the Court must abstain under *Princess Lida*. *See Jacobs v. DeShetler*, 465 F.2d 840, 841-42 (6th Cir. 1972) (per curiam) (abstaining under *Princess Lida* in favor of state court conservatorship of an insurance company that had merged with a fraternal association where the federal action was "concerned with a *res* consisting of the assets" of the fraternal association). The Court grants the motions to dismiss under *Princess Lida*.

**C.     *Colorado River***

The Moving Defendants also contend that the Court should refrain from exercising its jurisdiction under *Colorado River*. The Court may dismiss a "federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration" under *Colorado River* only when parallel state and federal actions exist and exceptional circumstances warrant dismissal. 424 U.S. at 818. This standard reflects "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817-18.

   **1.     Parallel proceedings**

"As a threshold matter . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru-Con Constr. Corp. v. Controlled Air,*

*Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). The pendency of a state claim involving the same parties and based on the same general facts or subject matter as a federal claim is not alone sufficient to establish parallelism. *Id.* Rather, there must be a substantial similarity between the two proceedings, which occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. *Id.* A federal court must exercise its jurisdiction if there is any doubt as to whether the state and federal proceedings are parallel. *Id.*

The Moving Defendants contend that there is a substantial likelihood that the receivership proceeding will fully dispose of the claims asserted here by Republic since Republic's claims in this action are virtually identical to its claims in its complaint in intervention in the receivership proceeding.[7] Republic does not argue that the receivership proceeding will not fully dispose of its federal claims or that its claims here differ from those it asserts in the receivership proceeding.[8] Rather, Republic contends that under *Fru-Con*, parallelism requires a pending action in state court at the time a federal action is commenced or a subsequent state court action that presents issues identical to the federal action which are "not governed in any way by federal law." Under this analysis, according to Republic, there is substantial doubt as to whether the state and federal proceedings are parallel.

---

[7] Republic asserts claims for replevin, detinue, and claim and delivery in this action that it does not assert in the receivership proceeding. There is, however, a substantial likelihood that those additional claims will be resolved in the receivership proceeding because they are based on the same arguments Republic makes with respect to its breach of contract claim, i.e., that Republic has the right to assignment of the Lancaster and Fort Worth Loans under the participation agreements.

[8] At oral argument, Republic argued that the Court should not compare its complaint in intervention in the receivership proceeding to its Complaint in this action. This comparison is necessary, however, to determine whether there is a substantial likelihood that the receivership proceeding will fully dispose of the claims asserted here by Republic.

Republic misreads *Fru-Con*, which was decided by a three-judge panel consisting of Judges Beam, Bye, and Shepherd. Judge Beam authored the opinion finding that the district court's abstention under *Colorado River* was an abuse of discretion. *Id.* at 530-40. Judge Beam's opinion indicates that parallelism requires a pending state-court proceeding when the federal action is commenced or the absence of issues governed by federal law. *See id.* at 537-38. Although Judge Bye concurred in the result reversing the district court's abstention, he joined Judge Shepherd in rejecting Judge Beam's requirement of a pending state-court action at the time the federal action began. *Id.* at 540 ("I agree, however, with the dissent's view as to the *Colorado River* abstention doctrine applying to this dispute and with its rejection of the 'originally filed' approach."). In short, a panel majority in *Fru-Con* did not adopt the parallelism test advanced by Republic.

Even if Republic's interpretation of *Fru-Con* were correct, parallel proceedings exist here. Republic contends there was no pending state-court action on February 25 when it filed its Complaint in this action because it did not formally become a party in the receivership proceeding until the state court granted Republic's motion to intervene on April 9, 2010. Republic filed its complaint in intervention in the receivership proceeding on February 1, attended hearings in the receivership proceeding before filing its Complaint in this action, and filed its motion to clarify the state court's order and a notice of removal on February 19. The February 5 state-court order refers to Republic as an intervenor. Based on Republic's recognized participation in the receivership proceeding before February 25, a pending state-court proceeding existed under the test advanced by Republic when Republic filed its Complaint in this action.

Moreover, federal law does not govern either proceeding. Republic asserts that its claims involve federal bankruptcy law and implicate federal banking guidelines because the

13

participating banks are federally regulated and insured. It is undisputed that Republic asserts only state-law claims in both actions and that the language of the participation agreements, which are governed by Minnesota law, controls Republic's rights under the agreements. Moreover, bankruptcy law and federal banking guidelines are only persuasive authority in the state-court receivership proceeding.[9] *See State by Ulland v. Int'l Ass'n of Entrepreneurs of Am.*, 527 N.W.2d 133, 136 (Minn. Ct. App. 1995) ("Furthermore, this court is not bound by precedent from other states or the federal courts."). Consequently, even under the test advanced by Republic, the state-court receivership and this action are parallel proceedings.

### 2. Exceptional circumstances

The task of federal courts "is not to find some substantial reason for the exercise of federal jurisdiction" but rather to ascertain whether exceptional circumstances exist justifying the surrender of federal jurisdiction. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). Six non-exhaustive factors guide a court in determining whether exceptional circumstances warrant dismissal. *Fru-Con*, 574 F.3d at 534. Those factors are: (1) whether there is a *res* over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, (4) which case has priority, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *Id.*

---

[9] To the extent Republic asserts that the allegations in its Complaint that federal banking guidelines "establish relevant legal principles that should control the outcome of this action" require the Court to accept for purposes of this motion that federal law governs this action, Republic is mistaken. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (holding that courts are not required to "blindly accept the legal conclusions drawn by the pleader from the facts" on a Rule 12(b)(6) motion).

14

With respect to the first factor, for the reasons previously stated, the state court has exercised jurisdiction over the Lancaster and Fort Worth Loans. This factor favors dismissal.

With respect to the second factor, it is undisputed that the District of Minnesota is not an inconvenient forum. This factor weighs against dismissal.

With respect to the third factor, the Moving Defendants contend that maintaining separate actions may result in piecemeal litigation. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998). If the maintenance of separate actions may result in piecemeal litigation, this factor favors abstention unless the relevant law would require piecemeal litigation and the federal court issue is easily severed. *Fru-Con*, 574 F.3d at 534. Here, resolving Republic's rights under the participation agreements and assigning the Lancaster and Fort Worth Loans to Republic will result in piecemeal litigation because the state court is adjudicating the same issues in the receivership proceeding. *See Deutsche Fin. Servs. Corp. v. Schwartz Homes, Inc.*, 187 F.R.D. 542, 547-48 (N.D. Ohio 1999) (abstaining on *Colorado River* grounds in part because piecemeal litigation would result if litigation of parties' rights in defunct corporation's assets proceeded parallel to state court receivership action). Moreover, Republic's claims against Lighthouse, First United, Choice, and Johnston are not easily severed from the receivership action. Consequently, this factor favors dismissal.

With respect to the fourth factor, the Moving Defendants maintain that the receivership proceeding has priority over this proceeding. Republic responds that the issues specific to it and Lighthouse have only been litigated in state court since February 2010. In the context of *Colorado River*, "priority" does not necessarily relate to which case was filed first but instead

15

places a greater emphasis on the relative progress made in the cases. *Fru-Con*, 574 F.3d at 534. In this action, no party has filed an Answer, there is no scheduling order, and no discovery has taken place. In contrast, Republic has served and received responses to discovery in the receivership proceeding and the state court has held a hearing on the proposed pro rata distribution, issued an order addressing the proposed distribution, and scheduled additional briefing and a hearing to address Republic's concerns about the proposed distribution. Because the receivership proceeding has progressed further than this action, this factor favors dismissal.

As previously stated, neither this action nor the state-court action are controlled by, or present issues of, federal law. Consequently, the fifth factor is neutral or favors dismissal. *Cf. Moses H. Cone Mem. Hosp.*, 460 U.S. at 25 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of [deferring to the state court], the presence of federal-law issues must always be a major consideration weighing against surrender.").

Finally, the Court turns to whether the state forum is adequate to protect Republic's rights. Republic concedes that it has "no complaints" about the state court and that the April 30 state-court order was "favorable" to its position. Republic, however, questions whether it will receive due process in state court because Lighthouse has "generally controlled" the receivership proceeding and because it is unclear whether the state court will hear testimony, consider evidence, or conduct a trial with respect to the September 27 hearing on the proposed pro rata distribution. In addition, Republic contends that the state-court procedures are "nebulous" and have not complied with the Minnesota Rules of Civil Procedure. Republic specifically identifies the untimely service of motions and the state court's decision to hear argument on the proposed pro rata distribution without the benefit of discovery as disadvantages flowing from the state-

16

court's procedures. Finally, Republic would prefer to resolve its claims in a forum where they are not part of a larger action.

Republic's concerns about the receivership proceeding do not establish that the state forum is inadequate to protect Republic's rights. Despite rejecting Republic's contention that Lighthouse's motion for approval of the proposed pro rata distribution was a dispositive motion made without the benefit of discovery, the state court granted Republic's request for discovery and continued the hearing on Lighthouse's motion for approval of the proposed distribution. Moreover, the state court's April 30 order recognizes Republic's potential claims on the Lancaster and Fort Worth Loans and prohibits Lighthouse from restructuring or refinancing those loans without Republic's consent. There is no indication that Republic's claims, although only part of the receivership proceeding, will not be fully addressed by the state court. Finally, the Court has no reason to doubt that the September 27 hearing will comply with the requirements of due process or that the state court will adequately redress any violations of the Minnesota Rules of Civil Procedure brought to its attention.[10] Consequently, this factor favors dismissal.

Whether a federal court should dismiss an action because of parallel state-court litigation "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. Here, the Court's balancing of the relevant factors supports a finding that exceptional circumstances justify dismissal of this action under *Colorado River*. In addition, the state court is more familiar with the loans and participation agreements at issue and is well positioned to resolve the purely state-law issues raised by Republic. Finally, several parties in

---

[10] Republic does not assert that it sought and was denied relief from the state court for the alleged violations.

17

the receivership proceeding are not parties to this action, and an adjudication by the Court of Republic's rights in the Lancaster and Fort Worth Loans and under the associated participation agreements would significantly disrupt the receivership proceeding.

In addition to dismissal under *Barton* and *Princess Lida*, the Court concludes that exceptional circumstances warrant dismissal of this action under *Colorado River*.[11]

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Lighthouse's Motion to Dismiss [Docket No. 5] is GRANTED.

2. Johnston's Motion to Dismiss [Docket No. 10] is GRANTED.

3. Choice's Motion to Dismiss [Docket No. 14] is GRANTED.

4. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 16, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[11] Lighthouse also asserts that it is entitled to quasi-judicial immunity in its role as receiver. Because the Court concludes that dismissal is warranted under the *Barton*, *Princess Lida*, and *Colorado River* doctrines, the Court does not reach this issue.